WALKER *v.* BOTTOMLEY.

ESTOPPEL—TITLE TO LANDS.

> One who forecloses a mortgage as attorney for another, and
> who permits title to pass to his client under a sheriff's deed,
> is estopped, as to an innocent purchaser from the latter, to
> assert his own title to the land under a claim which, if es-
> tablished, would demonstrate his knowledge, at the time of
> foreclosure, of the invalidity of the mortgage

Appeal from St. Clair; Vance, J.   Submitted May 6,
1896.   Decided July 8, 1896.

Bill by Dewitt C. Walker against Thomas H. Bottom-
ley to quiet title.   From a decree for defendant, complain-
ant appeals.   Affirmed.

*Mitchell & Wellman,* for complainant.

*Henry P. Jenney (Frank Whipple,* of counsel), for
defendant.

LONG, C. J.   This bill is filed to quiet title to lot 1,
block 1, of Walker's plat of the village of Capac.

Complainant claims that he became the owner of the
lot prior to 1857; that in that year he made a contract in
writing to sell the same to one Alexander Campbell, by
the terms of which contract Campbell agreed to erect a
blacksmith shop thereon; that Campbell thereafter erected
the shop, and about a year afterwards sold and assigned
his contract to Reuben Banfill; that in the spring of 1858
Banfill called upon him for a deed of the lot under the
contract, whereupon he executed a deed ready for de-
livery, but before delivery he arranged with Banfill to
cancel the contract by the payment of certain promissory
notes which he had signed with Banfill, and by the sale of
certain property to him, and that the arrangement was

completed by which no deed was to be delivered, but the contract destroyed; that at that time he supposed he took the deed with him from Banfill's house; that, missing the deed, the next morning he called upon Banfill, and was informed by him that, through some mistake, the deed had been burned by Banfill's wife; that thereafter he removed the blacksmith shop from the premises, but had occupied them continuously, except as hereafter stated; that in 1868 he for the first time learned that the deed to Banfill had not been destroyed, but had been placed upon record in the office of the register of deeds, and that Banfill had conveyed the premises by deed to Amanda Funston, and that she, together with her husband, had executed a mortgage upon the premises to John Phelps; that this mortgage was executed January 22, 1868, and about a month after the date of the deed to Funston, and covered other parcels of land sufficient to pay the amount claimed in the mortgage; that in 1874 Phelps called upon him as an attorney to foreclose the mortgage; that at first he refused to act as an attorney in the foreclosure proceedings, whereupon Phelps promised him that, if he would so act, he (Phelps) would bid in the premises, and, after his deed became operative, he would deed to the complainant the lot in question; that he did so act as attorney in the foreclosure, and the lot was sold and bid in by Phelps; that a short time after the redemption had expired he applied to Phelps for a quitclaim deed, and on or about May 11, 1876, Phelps did make and deliver to him a quitclaim deed, which he (complainant) supposed was of the lot in controversy; that he recorded it in the office of the register of deeds; that shortly afterwards he learned that Phelps had conveyed the premises to his wife, and she thereupon conveyed to defendant, Bottomley; that, hearing Bottomley claimed some title to the land, he showed defendant the recorded deed, who assented that he (complainant) had the controlling title; that he soon after discovered that in some way the deed had disappeared from among his papers,—and he charges upon informa-

tion and belief that the recorded deed was in some way changed to cover a lot different from the one he supposed he was obtaining from Phelps. Complainant claims to have continued in possession thereafter until April 24, 1892, when defendant unlawfully broke into and upon the premises, and plowed the same, when complainant thereafter again took possession, and defendant undertook by force to regain possession, when complainant commenced a suit in trespass against the defendant before a justice of the peace; that thereafter defendant commenced suit against him in trespass before the same justice; and that thereupon he filed this bill to quiet his title and restrain the prosecution of the trespass suit.

The defendant answers the bill, and neither admits nor denies the claim made by complainant as to his dealings with Banfill, but avers that he is a *bona fide* purchaser of the premises, and holds title under mesne conveyances from Banfill and wife. The defendant also sets up in his answer the foreclosure of the mortgage by complainant as attorney for Phelps, the purchase of the land by Phelps, and the deed from Phelps to his wife, and her conveyance to himself. The defendant denies that complainant showed him any deed of the premises from Phelps to himself, but admits that complainant told him he had such a deed, but, upon being asked to exhibit it, he invented some excuse for his failure to do so, and that, upon examining the records in the register's office, defendant found a deed from Phelps to complainant, but it conveyed other premises. Defendant also sets up in his answer that he and his grantors have been in actual possession of the premises from the time Banfill procured his deed from complainant, and that complainant committed trespasses thereon, and by force attempted to get possession thereof.

The court below found that, as early as 1869, the complainant knew that the deed from himself to Reuben Banfill was not lost, but was of record, and that Banfill

conveyed the premises, through his wife, to Amanda Funston, who executed the mortgage to Phelps, and that complainant, as attorney for Phelps, foreclosed the mortgage, and permitted Phelps to bid the same in, and that defendant had purchased the premises in 1880 from Eliza Phelps, and in good faith, without any knowledge whatever of complainant's claim. The court therefore directed in the decree that complainant execute to the defendant a conveyance of the premises, and that, in default thereof, a copy of the decree should be filed in the office of the register of deeds as a conveyance to the defendant from the complainant. Complainant appeals.

1. We think the evidence of complainant falls far short of showing any such continued, adverse, hostile, open, and notorious possession of the premises as would establish his claim of title.

2. We think the court was not in error in finding that the defendant was a good-faith purchaser. There was no evidence upon the record that complainant had any title whatever, and his action in foreclosing the mortgage for Phelps, and permitting title to pass to Phelps under the sheriff's deed, estops him, under the circumstances here shown, from setting up title in himself as against the defendant.

3. Upon the whole record, we think the complainant has made no such showing, by his proofs, as entitles him to make claim to the premises, and that the court below was correct in directing that title be confirmed in the defendant.

The decree will be affirmed, with costs.

The other Justices concurred.